**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

| | | |
|---|---|---|
| JAMES MICHAEL KITCHEN, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 11-5834 |
| v. | : | MEMORANDUM OPINION |
| | | & ORDER |
| JEFF GRONDOLSKY, et al., | : | |
| Defendants. | : | |

_____

This matter is before the Court on a Motion to Dismiss [36] filed by Defendants. Oral argument on the motion was heard October 28, 2013, and the record of that proceeding is incorporated here. The motion will be granted in part and denied in part.

Background

On January 31, 2006, Plaintiff James Michael Kitchen was sentenced to sixty-three months imprisonment by the United States District Court for the Southern District of West Virginia. The Federal Bureau of Prisons determined that the Plaintiff was to be incarcerated at Fort Dix Federal Correction Institution, in Fort Dix, New Jersey.

Some time thereafter, Plaintiff testified as a witness for the prosecution in a federal trial. As a result of his cooperation, on June 15, 2007, the United States filed a Rule 35(b) Motion with the United States District Court for the Southern District of West Virginia requesting that the Plaintiff's sentence be reduced. On or about February 1, 2008, the sentencing judge reduced Plaintiff's sentence to forty-two months, with credit for time served and otherwise leaving the original judgment in full force and effect. The Judge's Order specified, "The Clerk is directed to forward copies of this order to the defendant, all counsel of record, the United States Probation Department, and the United States Marshal." United States v. Kitchen, Criminal Action No. 2:05-00156, Document 43 (S.D.W.V. Feb. 1, 2008); Harvey Decl., ¶ 3, Ex. A.

The February 1, 2008 Order was stamped "Received" by the U.S. Marshal, Charleston, West Virginia on February 1, 2008 at 4:45 p.m. Harvey Decl., ¶ 4, Ex. B. Similarly, the February 1, 2008 Order was received by the United States Probation Department, scanned and uploaded into a Probation database, and electronically submitted to the United States Marshal for the Southern District of West Virginia on or about February 5, 2008. Harvey Decl., ¶ 13, Ex. J.

On March 23, 2010, Plaintiff requested a transcript of proceedings from his resentencing, at which he was represented by counsel but not present, and on April 2, 2010, Plaintiff filed a Petition for Writ of Habeas Corpus and a Motion to Appoint Counsel in the District Court for the Southern District of West Virginia.[1] In what his

---

[1] The Petition was filed by Plaintiff's former criminal defense counsel, who wrote:

"In the past week, Kitchen was returned to this district to testify at the Lecco retrial. Undersigned counsel was contacted by Assistant Federal Public Defender Amy Austin and informed that Kitchen was at South Central Regional Jail and stated he needed to see his former counsel.
Upon interview, counsel learned that Kitchen had never been released from federal custody and remains in the custody of the Bureau of Prisons. Kitchen states that he complained to his counselor at FCI Fort Dix, New Jersey, who told him there was nothing he could do. Kitchen states that at the time he should have been released, he had all the good time he had earned in three years incarceration. However, on February 18, 2010 he lost whatever good time he had accumulated.
Including the 157 day credit, but without allowing for good time, counsel's approximate calculation is that, Kitchen's 42-month sentence concluded on or about January 24, 2009. Therefore, it appears that Mr. Kitchen has been incarcerated for more than 14 months longer than the Court's sentence. He should be released immediately.
Kitchen has requested, however, that the Court appoint a probation officer for him and place him in a halfway house for four to six months. He points out that he has been in federal prison in New Jersey for more than four years, he has lost contact with his family, he has no place to live, and no way of earning a living. Because he was transferred to West Virginia from Fort Dix, New Jersey, Kitchen also has no clothes other than his prison jumpsuit, no personal belongings and no access to his prison account.
Counsel moves the Court to accommodate Mr. Kitchen's request, insofar as it is possible. Counsel also moves the Court to reduce Kitchen's term of supervised release and cancel the remainder of the $1000 fine currently imposed as equitable relief for the harms Mr. Kitchen has suffered by his loss of liberty."

counsel characterized as "an emergency petition," <u>United States v. Kitchen</u>, Criminal Action No. 2:05-00156, Document 57 (S.D.W.V. Aug. 17, 2010), Plaintiff alleged that he had been wrongfully incarcerated for the previous fourteen months. Plaintiff was released from custody on April 7, 2010, and a probation officer was appointed to oversee his supervised release. <u>United States v. Kitchen</u>, Criminal Action No. 2:05-00156, Document 59 (S.D.W.V. Sept. 30, 2010); Moran Decl., ¶ 2, Ex. 1.

In its August 10, 2010 Response to the Plaintiff's Petition for Writ of Habeas Corpus, the United States admitted that the Plaintiff "was imprisoned beyond his lawful release date." <u>United States v. Kitchen</u>, Criminal Action No. 2:05-00156, Document 56 (S.D.W.V. Aug. 10, 2010). The Government also acknowledged, "[Plaintiff's] 42-month sentence of imprisonment, calculated from the original sentencing date of January 31, 2006, while giving credit for 157 days of prior custody and approximately 164 days of good conduct time, yields a release date in September 2008. Kitchen, however, continued to be incarcerated at the Federal Correctional Institution, Fort Dix, New Jersey, past September 2008 and into 2010. He was not released by the Bureau of Prisons until April 7, 2010, when he began serving his three-year term of supervised release in Charleston, West Virginia." <u>Id.</u>

On September 30, 2010, Plaintiff's sentencing judge dismissed Plaintiff's habeas corpus Petition as moot, stating:

> The court contacted the United States Marshal's office and, upon investigation, it was learned that the defendant was indeed eligible for release. The defendant was released from prison on April 7, 2010. The defendant also requested in his petition that the court assign a probation officer to his case, place the defendant in a halfway house, reduce his term of supervised release and cancel the remainder of the $1,000 fine imposed as equitable relief for the harms he suffered by loss of his liberty.

---

<u>United States v. Kitchen</u>, Criminal Action No. 2:05-00156, Document 46 (S.D.W.V. Apr. 2, 2010).

On August 10, 2010, the government filed the United States Response to James Michael Kitchen's Petition for Writ of Habeas Corpus, by its counsel, Philip H. Wright, Assistant United States Attorney, stating that the petition should be dismissed inasmuch as the defendant was released from prison on April 7, 2010, that any monetary relief that may be due the defendant because of excess prison time, including his request that the fine be cancelled, should be determined pursuant to an administrative tort proceeding and suggesting that the defendant may seek to modify, reduce or request early termination of his term of supervised release.

On August 17, 2010, the defendant filed Petitioner's Reply to the United States' Response to Petition for Writ of Habeas Corpus, wherein he informs the court that since his release from incarceration a probation officer has been appointed to oversee his supervised release, fulfilling his request for immediate release and aid in rejoining society. The defendant also informs the court that, regarding the other issues raised in the petition, he is represented by other counsel and that a federal tort claim has been filed (administratively, according to the government) on his behalf.

United States v. Kitchen, Criminal Action No. 2:05-00156, Document 59 (S.D.W.V. Sept. 30, 2010).

On or about July 16, 2010, Plaintiff had filed an administrative tort claim, form SF-95 entitled "Claim for Damage, Injury, or Death," with the Northeast Regional Office of the Federal Bureau of Prisons alleging that he had served 595 days "unnecessarily in the custody of the United States," and seeking $1.5 million in damages. Moran Decl., ¶ 3, Ex. 2. The BOP denied Plaintiff's claim by letter dated January 11, 2011, stating "[a]fter careful review of this claim, and in consultation with the United States Marshal Service . . . [t]here is no evidence to suggest . . . negligence on the part of an employee of the Department of Justice." Moran Decl., ¶ 4, Ex. 3.

Plaintiff originated this case on October 6, 2011 by filing a Complaint against two Wardens of Fort Dix Federal Correction Institution, Jeff Grondolsky and Donna Zickefoose, and Robert Donahue, Plaintiff's Case Management Coordinator at Fort Dix. The Complaint was amended on October 12, 2011 to add Plaintiff's Case Manager, Kevin Bullock, as a Defendant. Plaintiff has alleged that the individual Warden Defendants knew that Plaintiff's sentence had been reduced and that he was to have been released

on or about September 12, 2008, but they failed to release him.  He further asserts that the Case Management Coordinator was responsible for overseeing issues related to Plaintiff's incarceration but ignored Plaintiff's multiple complaints that he was being held unlawfully beyond his release date, as did Plaintiff's Case Manager.

The parties have informed the Court that on or about April 7, 2012, Plaintiff mailed three Form SF-95s: one each to the United States Parole Commission, the U.S. Marshal Service, and the Administrative Office of the United States Courts.  See Harvey Cert. in Support of Mot. to Amend [Doc. 13] at Ex. F.  The administrative claims against the Administrative Office and the Parole Commission each alleged that "the Clerk of the Court and/or the United States Probation Service failed to fulfill the mandate in [the sentencing judge's February 1, 2008] order that caused Mr. Kitchen to lose his freedom for at least 573 days."  Id.  The SF-95 filed with the USMS alleged that "the U.S. Marshals Service was responsible for releasing Mr. Kitchen on 9/12/08 but due to its negligence Mr. Kitchen remained incarcerated for an additional 573 days."  Id.

Neither the AO nor the Parole Commission responded to Plaintiff's SF-95 within six months.  See Harvey Suppl. Cert. in Support of Mot. to Amend [Doc. 28] at ¶ 3.  The USMS, however, responded in a letter dated October 2, 2012 which stated that Plaintiff's administrative tort claim had been "previously denied" by the BOP "after consultation with the USMS" and "the determination on [Plaintiff's] claim by the BOP, on behalf of the United States, [received by Plaintiff's counsel on February 7, 2011] was final and conclusive."  Id. at Ex. A.

On December 19, 2012, after obtaining leave of Court, Plaintiff filed a Second Amended Complaint, naming as additional Defendants: (1) Teresa L. Deppner, Clerk of the United States District Court for the Southern District of West Virginia, for the alleged failure to notify the United States Probation Department and the United States

Marshals Service of the reduction of Plaintiff's sentence, and (2) the United States, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1) and § 2671, for the alleged negligence of the Administrative Office of the United States Judiciary in failing to mail the Order reducing Plaintiff's sentence, United States Parole Commission for failure to monitor the Bureau of Prisons, United States Marshals Service in failing to notify the Bureau of Prisons of the sentence reduction, and the Bureau of Prisons itself. See December 17, 2012 Order Granting Plaintiff's Motion to Amend [Doc. No. 30]; Pl. Opp'n Br. [Doc. No. 44] at 18.

Defendants have filed a Motion to Dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).  Plaintiff opposes the Motion.

<u>Applicable Standards</u>

Federal Rule of Civil Procedure 12 governs a court's decision to dismiss a claim based on the pleadings.  See Fed. R. Civ. P. 12.  More specifically, Federal Rule of Civil Procedure 12(b)(1) governs a court's decision to dismiss a claim for "lack of subject matter jurisdiction" and Federal Rule of Civil Procedure 12(b)(6) governs a court's decision to dismiss a claim for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6).

A. *Federal Rule of Civil Procedure 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) permits a court to dismiss a case for lack of subject matter jurisdiction.  A defendant may contest subject matter jurisdiction by attacking the face of the complaint (i.e., a facial attack) or by attacking "the existence of subject matter jurisdiction in fact, quite apart from any pleadings" (i.e., a factual attack). <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977); <u>Schwartz v. Medicare</u>, 832 F. Supp. 782, 787 (D.N.J. 1993); <u>Donio v. United States</u>, 746 F. Supp. 500, 504 (D.N.J. 1990).  A facial attack "contest[s] the sufficiency of the pleadings."

Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009) (citation omitted).  On a facial attack, the court must read the complaint in the light most favorable to the plaintiff and consider the allegations of the complaint as true. Mortensen, 549 F.2d at 891.

Under a factual attack, a court is not confined to the pleadings but may weigh and consider evidence outside the pleadings, including affidavits, depositions, and exhibits to satisfy itself that it has jurisdiction.  Id.; Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000); Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997) (stating that court can consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction).  This is because on a factual motion to dismiss for lack of subject matter jurisdiction, the court's very power to hear the case is at issue. Mortensen, 549 F.2d at 891; Gotha, 115 F.3d at 179.  Moreover, on a factual attack, no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claim.  Mortensen, 549 F.2d at 891.

Regardless of which approach is used, a plaintiff has the burden of proving that jurisdiction exists.  Lightfoot v. United States, 564 F.3d 625, 627 (3d Cir. 2009) (citing Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, 227 F.3d 62, 69 (3d Cir. 2000)); Mortensen, 549 F.2d at 891.  "The court may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction."  Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 438 (D.N.J. 1999) (citations omitted).

If the court finds that it lacks subject matter jurisdiction, it must dismiss the action under Rule 12(h)(3).  See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

B. *Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[1] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume

---

[1]"Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).

[2]This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Id.

their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 556 U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal citations omitted). See also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Analysis

A. *Negligence claims under the FTCA*

The FTCA grants jurisdiction to the district courts, and waives federal sovereign immunity over, "claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "The FTCA precludes suit against the United States unless the claimant has first presented the claim to the relevant Federal agency [within two years of its accrual] and the claim has been finally denied. See 28 U.S.C. § 2675(a). The final denial requirement is 'jurisdictional and cannot be waived.' Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971)." Lightfoot v. United States, 564 F.3d 625, 627 (3d Cir. 2009). The failure of the agency to make a final disposition of a claim within six months after it is filed may be deemed a final denial. See 28 U.S.C. § 2675(a). "After the denial of an administrative claim, the claimant has two options: (1) he may file suit in the District Court within six months of the denial pursuant to 28 U.S.C. § 2401(b); or (2) he may file a request for reconsideration directly with the agency to which the claim was originally made." Lightfoot, 564 F.3d at 627.

Regarding any negligence claim couched in terms of false imprisonment, Plaintiff acknowledges that such claim is time barred because it was not brought in this Court within six months of the January 2011 denial by the Bureau of Prisons of the administrative claim. See 28 U.S.C. § 2401(b).

Insofar as Plaintiff now asserts FTCA claims of negligence by the Administrative Office, Marshals Service, or Parole Commission, those claims also are time barred.

10

Plaintiff states that the Administrative Office was negligent in breaching its non-discretionary duty to serve Court orders on the appropriate parties, including Plaintiff. The alleged breach of duty therefore occurred in February 2008 and Plaintiff was injured when he was not released in September 2008. As such, the claim against the Administrative Office is time-barred.

Regarding the negligence claims against the Marshals Service and Parole Commission, Plaintiff contends that the first time he knew or should have known that he had been injured by those entities was when he was served with Initial Disclosures on April 6, 2012, because that is when he *discovered* that those Defendants "breached the duty owed to forward the reduction in sentence Order to the BOP [Marshal Service] or to monitor the prisoner's release dates [Parole Commission]." (Pl. Br., p. 14, 18.) Even if the Court applies the discovery rule, Plaintiff's negligence claims are outside the statute of limitations. Plaintiff certainly was aware of his injury by April 2, 2010 when he filed the habeas corpus Petition, but he did not bring the administrative claims against the Administrative Office, Marshals Service, or Parole Commission until April 7, 2012.

Beside arguing the discovery exception, Plaintiff also contends that the continuing violations doctrine should apply to permit an equitable exception to the statute of limitations. The continuing violations doctrine is inapplicable to Plaintiff's claims, however, as he actually is arguing that he *continued to be injured* by each of Defendants' single instances of negligence, which occurred in 2008. Accordingly, the FTCA precludes Plaintiff's negligence claims against the United States because he failed to present those claims to the relevant Federal agencies within two years of their accrual.

B. *Constitutional claims under* <u>*Bivens v. Six Unknown Fed'l Narcotics Agents,*</u>
*403 U.S. 388 (1971).*

Subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the Eighth Amendment's proscription against cruel and usual punishment. <u>Sample v. Diecks</u>, 885 F.2d 1099 (3d Cir. 1989) (finding a constitutional violation occurred when an inmate was imprisoned nine months and eight days after the expiration of his sentence). <u>See</u> <u>also</u> <u>Alston v. Read</u>, 678 F. Supp. 2d 1061 (D. Hawaii 2010) (reversed and remanded on other grounds) (145 day overstay sufficient to state Eighth Amendment claim); <u>Shorts v. Bartholomew</u>, No. 06–5877, 2007 WL 3037268 (6th Cir. Oct. 17, 2007) (plaintiff stated Eighth Amendment claim where he was held for 218 days beyond expiration of sentence); <u>Campbell v. Ill. Dept. of Corr.</u>, 907 F.Supp.1173 (N.D.Ill.1995) (same where plaintiff was incarcerated for two years beyond end of sentence).

To establish liability for incarceration without penological justification, a plaintiff must demonstrate three elements: (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention. <u>Sample</u>, 885 F.2d at 1110. <u>See</u> <u>also</u> <u>Montanez v. Thompson</u>, 603 F.3d 243, 252 (3d. Cir. 2010).

"[D]eliberate indifference has been demonstrated in those cases where prison officials were put on notice and then simply refused to investigate a prisoner's claim of sentence miscalculation." <u>Moore v. Tartler</u>, 986 F.2d 682, 686 (3d Cir. 1993). Among the circumstances relevant to a determination of whether deliberate indifference is

present are the scope of the official's duties and the role the official played in the everyday life of the prison as "not every official who is aware of a problem exhibits deliberate indifference by failing to resolve it." Sample, 885 F.2d at 1110. However, "if a prison official knows that, given his or her job description or the role he or she has assumed in the administration of the prison, a sentence calculation problem will not likely be resolved unless he or she addresses it or refers it to others, it is far more likely that" the prison official acted with deliberate indifference. Id. The crux of the deliberate indifference inquiry is whether the defendant had a duty to investigate and unravel the sentencing problems, not whether the defendant had the primary ability to resolve the problem. Id. at 1112. While a "defendant in a civil rights action must have personal involvement in the alleged wrongdoing . . . [p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

In this case, Plaintiff has alleged that he complained repeatedly to Defendants Donahue and Bullock and they and Defendants Grondolsky and Zickefoose knew that Plaintiff was being held in excess of his legal sentence but did nothing, resulting in Plaintiff serving an extra 573 days. At this point in the litigation, the allegations in the Second Amended Complaint are sufficient for Plaintiff's Bivens claim against the four Fort Dix FCI Defendants to survive the instant motion to dismiss.

As to the claim against Deppner, as discussed during oral argument, negligence claims are not cognizable under Bivens. The sole allegation against Deppner is an assumption that she failed to notify the United States Probation Service and the United

13

States Marshals Service that Plaintiff's sentence had been reduced.[2] See Second Am. Compl. ¶ 25. Despite Plaintiff's argument in attempt to impute willfulness onto Deppner merely by characterizing her alleged inaction as such, because there is no allegation or indication of an intentional constitutional violation, the claim against Deppner must be dismissed.

<u>Conclusion</u>

For these reasons, as well as those discussed on the record during oral argument,

IT IS ORDERED on this 4th day of December, 2013 that Defendants' Motion to Dismiss [36] is hereby <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>.

The constitutional claims against Defendants Jeff Grondolsky, Donna Zickefoose, Robert Donahue, and Kevin Bullock survive; all other claims are dismissed.

/s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.

---

[2] Through briefing, however, Plaintiff acknowledges that he was the only one allegedly not served with the Order. (Pl. Br., p. 19.) As outlined above, the record before the Court indicates that the Probation Department and the Marshals Service did receive the February 2008 Order.